## BURCHELL v. OSBORNE et al.[1]

*(Supreme Court, General Term, First Department. July 9, 1889.)*

1. MORTGAGES—FORECLOSURE—MARSHALING LIENS.

On foreclosure of a "blanket" mortgage on property which was also covered by junior mortgages on the separate parcels, a sale was ordered in parcels, in the inverse order in which the junior mortgages were given. *Held* that, on the sale of the last parcel, the surplus, after paying the blanket mortgage, should be applied to the satisfaction of the mortgage next in order of priority on that parcel when senior to other general mortgages, and the balance should thereafter be distributed among the holders of the various junior mortgages, whether on the whole of the property or a part thereof, according to priority of lien.

2. SAME—PRIORITY—RES ADJUDICATA.

Where the pleadings raise no issue as to the rights of subsequent lienors, a judgment of foreclosure, which directs the order in which separate parcels of land covered by different subsequent mortgages shall be sold, is not conclusive as to the priority of lien of the subsequent mortgagees.

Appeal from special term, New York county.

Action for mortgage foreclosure by Henry J. Burchell against Susannah Osborne and others. The mortgage foreclosed was a "blanket" mortgage covering eight houses and lots. The decree, which was entered by consent of all parties, directed that the mortgaged premises should be sold in eight separate parcels, and that the order of sale should be inverse to that in which the mortgages, which were held by the defendants, had been given. These mortgages held by the defendants were all subsequent to plaintiff's and covered, four of them, single houses and lots; one of them, three houses and lots; and two of them, the whole eight. The last house sold under the decree was that upon which the defendant Fay held a mortgage, which was next in order of time after plaintiff's. Said house was also covered by a mortgage held by the defendant Mehrhof, which was the fifth in order of time after plaintiff's; and a mortgage held by the defendant Arbogast, which was seventh in order of time. The next mortgage after Fay's in order of time was held by the defendant Brainerd Quarry Company, but did not cover the house covered

[1] Modifying 5 N. Y. Supp. 404.

by Fay's mortgage; and defendant Steers held a mortgage, which was fourth in order of time, and covered still another house. In order to raise sufficient money to pay the amount due plaintiff, it was necessary to sell all the houses. The last house (that covered by Fay's mortgage) sold for $30,000; and, after paying plaintiff, there remained the surplus of $20,000. The principal contest was between the quarry company, on the one hand, and Mehrhof and Arbogast on the other; the company insisting that it had an equitable lien upon the surplus, which was next after Fay's, and Mehrhof and Arbogast claiming that the surplus arose solely from the Fay house, upon which they had specific legal liens which must take precedence over an equitable lien. Another question was raised by the defendant Steers, who contended that the surplus should be apportioned among the holders of mortgages upon the several houses, without regard to priority in time, in proportion to the sums for which the several houses were sold. The referee awarded the surplus to Fay, Mehrhof, and Arbogast, whose mortgages more than equalled same, and the quarry company and Steers excepted. The exceptions were overruled, and the report of the referee confirmed, from which order of confirmation the defendants the Brainerd Quarry Company and Abraham Steers appeal.

*Henry Arden,* for Brainerd Quarry Company. *Mr. Paddock,* for Abraham Steers. *L. H. Anderson, Hal. Bell,* and *Daniel Daly,* for respondent.

PER CURIAM. The principle upon which the equities of the various claimants to the surplus in this case should be determined is that the portions of the mortgaged premises first aliened shall be the last to be sold to pay the mortgage debt. Where the alienation, however, is not absolute, as by a deed in fee-simple, but only qualified, as by a mortgage, the effect of such alienation is to postpone the application of the property which it covers to the payment of the general mortgage debt only to the extent of the amount secured by the junior mortgage. Any surplus arising after the satisfaction of the junior mortgage is applicable upon the general mortgage, because the mortgagor is primarily liable for the debt, and any equity of redemption or any of the mortgaged lands remaining in his hands should go towards the payment of the mortgage debt in preference to premises or funds upon which his alienees have claims. The mortgage to Fay, therefore, being an alienation of the property which it covered only to the extent of Fay's claim, any surplus remaining after the payment of that claim ought to be applied to the mortgage foreclosed in this action. When the mortgage was executed to the Brainerd Quarry Company, that corporation became entitled to have any equity in the plot which had been mortgaged to Fay applied to the satisfaction of the general mortgage in preference or prior to the plot mortgaged to the company. And upon the same principle the mortgage to the Brainerd Quarry Company only relieved the plot which it covered from prior incumbrances so far as it was necessary to discharge the lien of the company, and any surplus arising after the payment of the company's claim became applicable to the satisfaction of the next mortgage in order of priority executed by the defendant Osborne, and so on till the fund was exhausted.

It is urged that the judgment of foreclosure in which was directed the order in which the different parcels should be sold is conclusive on this application to distribute the surplus. We think not. The pleadings raise no issue as to the rights of the subsequent lienors. The complaint did not set forth the character or relative priorities of the subsequent liens. No answer was interposed, setting up a lien of any defendant, or asking for any determination or judgment as to the rights of any defendant. The judgment, therefore, does not assume to fix those rights except so far as they are necessarily involved in determining the order of sale. In the view we have taken of the case, the sale of the whole mortgaged premises was necessary so that a proper distribution of the proceeds might be made among the various lienors. The

only provision of the judgment relating to this subject is a direction that the eight mortgaged lots be sold in a piescribed order. As a matter of fact, all were sold under the decree. We do not think this mere direction as to the order of sale should be deemed a conclusive adjudication as to the rights of the junior incumbrancers, each of whom was obliged in the surplus money proceedings to establish his lien. The decree, of itself, would not give any one of them a right to share in the surplus. The respective priorities of their several liens could hardly have been fixed when the existence of the liens themselves was left open for determination. Our conclusion is that the order of the special term, so far as it awards the payment of the Fay mortgage, should be affirmed. The other directions of the order should be reversed, and the surplus directed to be distributed among the holders of the various junior mortgages according to the dates when they respectively became liens; except that in no case should a greater amount be paid on account of the liens on any one lot than was realized for that lot at the sale.